JOSHUA B. SHIFFRIN*
ELISABETH OPPENHEIMER*
BREDHOFF & KAISER P.L.L.C.
805 15th Street, N.W.  Suite 1000
Washington, D.C.  20005
Telephone: (202) 842-2600
Facsimile: (202) 842-1888
Email: jshiffrin@bredhoff.com
eoppenheimer@bredhoff.com
*pro hac vice motions to be filed

GEORGE M. KRAW (California Bar No. 71551)
KATHERINE MCDONOUGH (California Bar No. 241426)
KRAW LAW GROUP, APC
605 Ellis Street, Suite 200
Mountain View, California 94043
Telephone: 650-314-7800
Facsimile:  650-314-7899
gkraw@kraw.com
kmcdonough@kraw.com

*Counsel for Plaintiffs Board of Trustees of the Bakery and Confectionery Union and Industry International Pension Fund*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND,<br><br>            Plaintiff,<br><br>    v.<br><br>UNITED STATES BAKERY; MOUNTAIN STATES BAKERIES LLC; CENTRAL CALIFORNIA BAKING COMPANY,<br><br>            Defendants. | CASE NO.<br><br>**COMPLAINT** |

**INTRODUCTION**

1.     This is an action to collect delinquent contributions and withdrawal liability that the Defendants owe to the Bakery and Confectionery Union and Industry International Pension Fund ("Pension Fund").  The action is brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq*., as amended by the Multiemployer Pension Plan Amendments Act of 1980 (hereafter "ERISA").

**JURISDICTION, PARTIES, AND VENUE**

2.     The Court has jurisdiction of this action under the terms of Sections 502(e)(1) and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e)(1), 1451(c).

3.     Venue in this district is proper under Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2), 1451(d), because at least one defendant resides or may be found in this district.

4.     The Pension Fund is a trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186(c)(5). The Pension Fund is an employee benefit plan within the meaning of Sections 3(2) and 3(3) of ERISA, 29 U.S.C. § 1002(2) and (3), and is maintained for the purpose of providing retirement and related benefits to eligible participants. The Pension Fund is also a multiemployer pension plan within the meaning of Sections 3(37)(A) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37)(A), 1301(a)(3).

5.     The Pension Fund provides pension benefits to eligible persons who retired from participating employers in pension fund, as well as to their spouses and beneficiaries.  Employers participating in the Pension Fund are primarily enterprises in the baking and confectionery industries.

6.     Plaintiff Board of Trustees of the Bakery and Confectionery Union and Industry International Pension Fund ("Board of Trustees") administers the Pension Fund and is a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

2
COMPLAINT

7.     The Pension Fund maintains its principal place of business at 10401 Connecticut Avenue, Kensington, Maryland 20895. The Pension Fund is administered at that location, in Montgomery County, Maryland.

8.     Plaintiff brings this action on behalf of the Pension Fund for the benefit of its participants and beneficiaries pursuant to Section 4301(a) of ERISA, 29 U.S.C. § 1451(a).

9.     Defendant United States Bakery ("USB") is a privately held corporation headquartered in Portland, Oregon, and doing business in (among other locations) Exeter, California.  USB is an employer in an industry affecting commerce within the meaning of Sections 3(5), 3(11), and 3(12) of ERISA, 29 U.S.C. § 1002(5), (11), and (12).  USB's primary business is producing and selling baked goods.

10.    Mountain States Bakeries LLC ("MSB") is an Oregon limited liability company in the business of selling and producing baked goods.  It is a wholly owned subsidiary of USB.

11.    Central California Baking Company ("CCBC") is a privately held Oregon corporation in the business of producing and selling baked goods.  It is an affiliate of USB.

12.    On information and belief, USB, MSB, and CCBC are trades or businesses under common control with each other, within the meaning of Section 4001(b) of ERISA, 29 U.S.C. § 1301(b)(1), and, as such, USB, MSB, and CCBC constitute a single employer for purposes of the obligation to pay withdrawal liability to the Pension Fund.

13.    On information and belief, MSB and CCB operate as alter egos of USB.

**FACTUAL BACKGROUND**

*The delinquent contribution and withdrawal liability claim*

14.    As set forth at greater length below, USB is the successor to Svenhard's Swedish Bakery ("Svenhard").

15.    For decades, until about December 2015, Svenhard was a participating employer in the Pension Fund.  Pursuant to a series of collective bargaining agreements, Svenhard was obligated to make pension contributions for employees at its Oakland, California facility who were covered by and participating in the Pension Fund.

16.     Through these collective bargaining agreements, Svenhard agreed to be bound by the Pension Fund's Agreement and Declaration of Trust ("Trust Agreement").

17.     In December 2015, Svenhard closed its Oakland, California facility; transferred all operations to a facility in Exeter, California; and withdrew from the Pension Fund within the meaning of Section 4203 of ERISA, 29 U.S.C. § 1383.

18.     As a consequence of that withdrawal, Article V § 6 of the Trust Agreement and Section 4201(a) of ERISA, 29 U.S.C. § 1381(a), required Svenhard to pay withdrawal liability to the Pension Fund.

19.     Svenhard's total withdrawal liability to the Pension Fund was $50,150,043.  Under the provisions of ERISA governing payment of withdrawal liability, Svenhard could only be required to pay $162,941 per month for 20 years (for a total of $39,105,840).  The Pension Fund notified Svenhard of the withdrawal liability assessment on March 1, 2016.

20.     On July 13, 2016, Svenhard's Chief Operating Officer, David Kunkel, informed the Pension Fund that Svenhard could not pay the assessed withdrawal liability and offered a settlement amount of approximately $3,500,000 to be paid ratably over 240 months.

21.     In 2018, the Pension Fund made an additional demand for $514,847.67 in delinquent contributions, after discovering that Svenhard had failed to make pension contributions owed in connection with severance and vacation payments made to severed employees.

22.     Between 2016 and 2018, at the Pension Fund's request, Kunkel provided information about Svenhard's financial status so that the Pension Fund could evaluate the proposed settlement of the withdrawal liability and delinquent contribution claim.  Kunkel never informed the Pension Fund of the true nature of the financial relationship between Svenhard and the Defendants in this case.

23.     After concluding that Svenhard did not have the resources to pay the entire assessed withdrawal liability, the Pension Fund reached a settlement agreement with Svenhard in April 2019.  The settlement agreement provided that Svenhard would pay the entire delinquent contribution amount of $514,847.67, with interest, in payments of $8,580.80 per month for 60

4

months.  As to withdrawal liability, Svenhard agreed to pay installments of $12,500 for 240 months, for a total of $3,000,000.  The agreement provided that the Pension Fund would provide releases to Svenhard after all payments were made for both the contribution delinquency and withdrawal liability.

24.     The April 2019 settlement agreement provided as follows:

If Svenhard fails to make any payment provided by paragraph 11 [contribution delinquency] or paragraph 13 [withdrawal liability] on or before the date that it is due, the Pension Fund may declare a default under this Agreement by sending written notice to Svenhard.  If Svenhard does not cure that default within five business days after the date of that written notice, the Pension Fund may declare a default under this Agreement by sending written notice to Svenhard.  If Svenhard does not cure that default within five business days after the date of that written notice, the Pension Fund may declare the unpaid debt immediately due and owing, as follows:

a.  If the Default Occurs Under Paragraph 11, Svenhard will be obligated to pay the entire unamortized amount under paragraph 11, plus interest on the balance of the principal and interest that remains through the date of default, at the rate of 5.25% per annum.

b.  If the Default Occurs Under Paragraph 13, Svenhard will be obligated to pay the full amount of withdrawal liability ($39,105,840) plus interest at the rates prescribed by regulations of the Pension Benefit Guaranty Corporation and calculated from May 1, 2016, with credit only for amounts actually paid under this Agreement to the date of default.

c.  The Pension Fund shall be entitled to file a legal action to collect the amount owed as described in subparagraph a and/or b, as applicable, and in that action shall be entitled as a matter of contract to all remedies that are usually available for collection of delinquent contributions under 29 U.S.C. § 1145, and (in the case of default under paragraph 13) for collection of defaulted withdrawal liability under 29 U.S.C. 1451(b).

*Defendants' Acquisition of Svenhard*

25.     Unbeknownst to the Pension Fund, beginning in 2014, Svenhard entered into a series of agreements with USB, MSB, and/or CCBC.  Over the next five years, USB (at times acting through MSB or CCBC) exerted increasing control over Svenhard, culminating in USB fully taking over Svenhard in late 2019.  A principal purpose of this slow-motion takeover was to avoid liability for Svenhard's debts, in particular withdrawal liability.

26.     In April 2014, USB entered into a series of agreements with Svenhard.  First, USB purchased Svenhard's Exeter, California facility and leased it back to Svenhard for 5 years.

Second, USB purchased Svenhard's recipes, formulas, the "Svenhard's" trademark, and licensed them back to Svenhard for 5 years. Third, USB purchased Svenhard's distribution rights in all of Svenhard's then-current territories. Beginning in April 2014, USB made periodic transfers of funds to Svenhard (sometimes structured as payments and sometimes structured as loans) for operating expenses or to pay off debt.

27. After the April 2014 agreements were signed, USB took over Svenhard's corporate governance function, including having USB Chief Executive Officer Bob Albers attend Svenhard's Board of Director meetings and control its decisions. USB dictated Svenhard's personnel decisions, equipment purchase decisions, and operational decisions.

28. USB encouraged Svenhard's closure of the Oakland facility in 2015 and Svenhard's move to the Exeter facility.

29. USB representatives were aware of and concerned about Svenhard's withdrawal liability to the Pension Fund and the possibility that USB would be held liable for payment of this withdrawal liability as a successor to Svenhard. In light of this concern, Albers asked to be kept informed of any communications between Svenhard and the Pension Fund regarding that topic, and he scheduled special meetings at Svenhard's offices concerning the matter. Albers also sent USB's Chief Financial Officer at the time, Jerry Boness, to meet with Svenhard's staff for the purpose of preparing USB's own estimate of the withdrawal liability. Boness estimated that the withdrawal liability would be approximately $42 million.

30. After Svenhard received the Pension Fund's withdrawal liability assessment in March 2016, Albers insisted on being updated at all stages of Svenhard's negotiations with the Pension Fund, and he provided input in those negotiations. As described above, Svenhard's settlement with the Pension Fund was signed in April 2019.

31. In July 2017, Svenhard executed a Security Agreement that gave USB security interest in all of Svenhard's personal property (including its remaining trademarks), in return for USB guaranteeing a line of credit procured by USB on Svenhard's behalf.

COMPLAINT

32.     USB extended its leaseback arrangements with Svenhard, which were due to terminate in early 2019, through mid-2019.  By mid-2019, USB had installed its own employee at the Exeter facility who directed all day-to-day operations.

33.     On or about November 3, 2019 – approximately six months after Svenhard had reached a settlement on withdrawal liability with the Pension Fund – USB terminated the all of leaseback agreements.

34.     As a result of the termination of the leaseback agreements, by on or about November 4, 2019, USB owned, possessed, and controlled the Exeter facility, the equipment in the facility, the Svenhard's recipes and formulas, and the "Svenhard's" trademark, thus completing USB's takeover of Svenhard.

35.     The workforce producing the products at the Exeter facility remained the same after USB completely took over Svenhard.

36.     The facility, machinery, baking equipment, and computer systems remained the same after USB completely took over Svenhard.

37.     The methods of production remained the same after USB completely took over Svenhard.

38.     The products remained the same after USB completely took over Svenhard.  The products were made with the same recipes, tasted the same, and were packaged in the same way.

39.     The distributors, the distribution chain, the distribution methods, and the customers remained the same after USB completely took over Svenhard.

40.     USB sells the products made at the Exeter facility under the name "Svenhard's."

41.     From the perspective of Svenhard/USB customers, there have been no changes since USB completely took over Svenhard.

*The default on the settlement agreement*

42.     In December 2019 – one month after USB completely took over Svenhard – Svenhard failed to make the payments required by the settlement agreement.

43.     On December 13, 2019, the Pension Fund sent a letter to Svenhard stating that "as of this date, the December installment payment has not been received by the Fund.  Svenhard is

7

COMPLAINT

therefore in default in payment under the Settlement Agreement. . . . Under paragraph 16 of the Settlement Agreement, Svenhard has 5 business days from the date shown on this letter to cure the default in payment.  If Svenhard fails to pay the amount of $21,080.80 within that period of 5 business days, it will owe the entire balance of the delinquent contributions and the entire balance of the original sum of withdrawal liability, plus interest."

44.     Svenhard did not cure its default in payment.

45.     On December 19, 2019, Svenhard filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of California, Case No. 2019-15277.  The bankruptcy proceeding remains pending.

46.     The Pension Fund has not received any payments from either Svenhard or any of the Defendants toward payment of the debt owed under the Settlement Agreement since November 2019.

**COUNT I**

**(As to all Defendants)**

**Pursuant to Sections 515 and 4301 of ERISA**

47.     Plaintiffs reassert all of the facts alleged in paragraphs 1 through 46.

48.     As acknowledged in the April 2019 Settlement Agreement, Svenhard owes the Pension Fund a principal amount of $39,629,322.96 in withdrawal liability ($39,704,322.96 minus a credit for $75,000.00 in payments made pursuant to the April 2019 settlement agreement), plus interest at the rates prescribed by regulations of the Pension Benefit Guaranty Corporation and calculated from May 1, 2016.

49.     Under ERISA, USB is liable for Svenhard's withdrawal liability obligations as Svenhard's successor if "under the totality of the circumstances, there is 'substantial continuity'" between Svenhard's operation and USB's operation, and if USB took over the operation with notice of the withdrawal liability obligation.  *Resilient Floor Covering Pension Tr. Fund Bd. of Trustees v. Michael's Floor Covering, Inc*., 801 F.3d 1079, 1090 (9th Cir. 2015).

50.     The facts described in paragraphs 28 - 30 demonstrate that USB took over the operation with notice of the withdrawal liability obligation.

COMPLAINT

51.     The facts described in paragraphs 34 - 41 demonstrate that there is substantial continuity between Svenhard's operation and USB's operation.

52.     USB's obligation to pay the withdrawal liability owed to the Pension Fund by Svenhard is enforceable under Section 515 of ERISA, 29 U.S.C. § 1145 and Section 4301 of ERISA, 29 U.S.C. § 1451.

53.     Under Section 515 of ERISA, 29 U.S.C. § 1145; Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2); and Section 4301 of ERISA, 29 U.S.C. § 1451, USB is also obligated to pay the Pension Fund the greater of the accrued interest or liquidated damages in the amount of twenty percent (20%), attorneys' fees, and costs of this action.

54.     MSB and CCBC, as business under common control with USB, or as alter egos of USB, are jointly and severally liable for the withdrawal liability, interest, the greater of the accrued interest or liquidated damages in the amount of twenty percent (20%), attorneys' fees, and costs of the action that USB owes to the Pension Fund.

**COUNT II**

**(As to All Defendants)**

**Pursuant to Section 515 of ERISA**

55.     Plaintiffs reasserts all of the facts alleged in paragraphs 1 through 54.

56.     As acknowledged in the April 2019 Settlement Agreement, Svenhard owes the Pension Fund a principal amount of $563,106.39 in delinquent contributions ($598,482.96 minus a credit for $35,376.57 in payments made to the principal pursuant to the April 2019 settlement agreement), as well as interest on the balance of the principal.

57.     The April 2019 settlement agreement constituted a novation of Svenhard's contractual and statutory obligation to pay delinquent contributions to the Pension Fund.

58.     Under ERISA, USB is liable for Svenhard's delinquent contribution obligation as Svenhard's successor if "under the totality of the circumstances, there is 'substantial continuity'" between Svenhard's operation and USB's operation, and if USB took over the operation with notice of the delinquent contribution obligation.  *Resilient Floor Covering Pension Tr. Fund Bd.*

*of Trustees v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1090 (9th Cir. 2015); *Haw.*

*Carpenters Tr. Fund v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 294 (9th Cir. 1987)

59.     The facts described in paragraphs 28 - 30 demonstrate that USB took over the operation with notice of the delinquent contribution obligation.

60.     The facts described in paragraphs 34 - 41 demonstrate that there is substantial continuity between Svenhard's operation and USB's operation.

61.     USB's obligation to pay the delinquent contributions owed to the Pension Fund by Svenhard is enforceable under Section 515 of ERISA, 29 U.S.C. § 1145.

62.     Under Section 515 of ERISA, 29 U.S.C. § 1145, and Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), USB is also obligated to pay the Pension Fund the greater of the accrued interest or liquidated damages in the amount of twenty percent (20%), attorneys' fees, and costs of this action.

63.     MSB and CCBC, as business under common control with USB, or as alter egos of USB, are jointly and severally liable for the delinquent contributions, interest, the greater of the accrued interest or liquidated damages in the amount of twenty percent (20%), attorneys' fees, and costs of the action that USB owes to the Pension Fund.

**COUNT III**

**(As to All Defendants)**

**Pursuant to Section 4212 of ERISA**

64.     Plaintiffs reassert all of the facts alleged in paragraphs 1 through 63.

65.     The facts described in paragraphs 25-34 demonstrate that a principal purpose of USB's slow-motion takeover of Svenhard was to avoid or evade the payment of withdrawal liability that it would otherwise have had to pay to the Pension Fund.

66.     Under Section 4212 of ERISA, 29 U.S.C. § 1392, the Pension Fund may collect withdrawal liability from USB liability notwithstanding the transaction that USB made with the purpose of avoiding or evading the payment of withdrawal liability.

67.     As acknowledged in the April 2019 Settlement Agreement, the principal amount of withdrawal liability owed is $39,629,322.96 ($39,704,322.96 minus a credit for $75,000.00 in

10

COMPLAINT

payments made pursuant to the April 2019 settlement agreement), plus interest at the rates prescribed by regulations of the Pension Benefit Guaranty Corporation and calculated from May 1, 2016.

68. USB's obligation to pay the withdrawal liability owed to the Pension Fund by Svenhard is enforceable under Section 515 of ERISA, 29 U.S.C. § 1145; Section 4301 of ERISA, 29 U.S.C. § 1451; and Section 4212 of ERISA, 29 U.S.C. § 1392.

69. Under Section 515 of ERISA, 29 U.S.C. § 1145; Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2); Section 4301 of ERISA, 29 U.S.C. § 1451, and Section 4212 of ERISA, 29 U.S.C. § 1392, USB is also obligated to pay the Pension Fund the greater of the accrued interest or liquidated damages in the amount of twenty percent (20%), attorneys' fees, and costs of this action.

70. MSB and CCBC, as business under common control with USB, or as alter egos of USB, are jointly and severally liable for the withdrawal liability, interest, the greater of the accrued interest or liquidated damages in the amount of twenty percent (20%), attorneys' fees, and costs of the action that USB owes to the Pension Fund.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to award a judgment ordering USB, MSB, CCBC, and their officers, agents, successors, and assigns:

1. To pay to the Pension Fund all delinquent contributions Svenhard owes to the Pension Fund;

2. To pay to the Pension Fund all withdrawal liability Svenhard owes to the Pension Fund;

3. To pay to the Pension Fund interest that has accrued on all delinquent contributions and withdrawal liability;

4. To pay to the Pension Fund an additional amount equal to the greater of the accrued interest or liquidated damages in the amount of twenty percent (20%); and

5. To pay to the Plaintiffs their reasonable attorneys' fees, accountant fees, and costs of this action.

6. Any other legal or equitable relief to which Plaintiffs are entitled.

11

COMPLAINT

1   Dated:  11/10/2020                    Respectfully Submitted,

2

3                                          /s/ Katherine McDonough

4                                          KATHERINE MCDONOUGH
                                           KRAW LAW GROUP, P.C.
5                                          605 Ellis Street, Suite 200
                                           Mountain View, CA 94043
6                                          Telephone: (650) 314-7800
                                           Facsimile: (650) 314-7899
7                                          Email: kmcdonough@kraw.com

8
                                           JOSHUA B. SHIFRIN*
9                                          BREDHOFF & KAISER P.L.L.C.
                                           805 15th Street, N.W.  Suite 1000
10                                         Washington, D.C.  20005
                                           Telephone: (202) 842-2600
11                                         Facsimile: (202) 842-1888
                                           Email: jshiffrin@bredhoff.com
12

13                                         *Counsel for Plaintiffs Bakery and
                                           Confectionery Union and Industry*
14                                         *International Pension Fund*

15                                         **Pro Hac Vice* application forthcoming*

16

17

18

19

20

21

22

23

24

25

26

27

28

12

COMPLAINT